1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

11   JEFF WALKER,

12                 Plaintiff,

13          v.

14   Dr. WECHSLER, et. al.,

15                 Defendants.

16

**Case No.  1:16-cv-01417-JLT (PC)**

**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**

**(Doc. 1)**

**30-DAY DEADLINE**

17

18          Plaintiff complains of being forced to be dorm-celled and/or subjected to 1:1 supervision

19   by male staff at Coalinga State Hospital.  However, as discussed below, Plaintiff fails to state a

20   cognizable claim against any of the named Defendants.  Thus, the Complaint is dismissed and

21   Plaintiff is granted leave to file a first amended complaint.

22   **I.          Screening Requirement and Standard**

23          "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court

24   shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to

25   state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).  A complaint, or

26   portion thereof, should only be dismissed for failure to state a claim upon which relief may be

27   granted if it appears beyond doubt that Plaintiff can prove no set of facts in support of the claim

28   or claims that would entitle him to relief.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)

1

1    (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Palmer v. Roosevelt Lake Log*

2    *Owners Ass'n*, 651 F.2d 1289, 1294 (9th Cir. 1981).

3    **II.**    **Pleading Requirements**

4         **A.**      **Federal Rule of Civil Procedure 8(a)**

5         "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

6    exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534

7    U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a).  A complaint must contain "a short and plain

8    statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. Pro. 8(a).

9    "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and

10    the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

11         Violations of Rule 8, at both ends of the spectrum, warrant dismissal.  A violation occurs

12    when a pleading says too little -- the baseline threshold of factual and legal allegations required

13    was the central issue in the *Iqbal* line of cases. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678,

14    129 S.Ct. 1937 (2009).  Rule 8 is also violated, though, when a pleading says *too much*. *Cafasso,*

15    *U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1058 (9th Cir.2011) ("[W]e have

16    never held -- and we know of no authority supporting the proposition -- that a pleading may be of

17    unlimited length and opacity.  Our cases instruct otherwise.") (citing cases); *see also McHenry v.*

18    *Renne*, 84 F.3d 1172, 1179–80 (9th Cir.1996) (affirming a dismissal under Rule 8, and

19    recognizing that "[p]rolix, confusing complaints such as the ones plaintiffs filed in this case

20    impose unfair burdens on litigants and judges").

21         Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a

22    cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556

23    U.S. 662, 678 (2009), (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

24    Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is

25    plausible on its face.'" *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 555).  Factual

26    allegations are accepted as true, but legal conclusions are not. *Iqbal.* at 678; *see also Moss v. U.S.*

27    *Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.

28         While "plaintiffs [now] face a higher burden of pleadings facts . . . ," *Al-Kidd v. Ashcroft*,

1   580 F.3d 949, 977 (9th Cir. 2009), the pleadings of *pro se* inmates and detainees are still

2   construed liberally and are afforded the benefit of any doubt.  *Hebbe v. Pliler*, 627 F.3d 338, 342

3   (9th Cir. 2010).  However, "the liberal pleading standard . . . applies only to a plaintiff's factual

4   allegations," *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil

5   rights complaint may not supply essential elements of the claim that were not initially pled,"

6   *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of*

7   *Regents*, 673 F.2d 266, 268 (9th Cir. 1982)), and courts are not required to indulge unwarranted

8   inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation

9   marks and citation omitted).  The "sheer possibility that a defendant has acted unlawfully" is not

10  sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of

11  satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at

12  969.

13          Further, "repeated and knowing violations of Federal Rule of Civil Procedure 8(a)'s 'short

14  and plain statement' requirement are strikes as 'fail[ures] to state a claim,' 28 U.S.C. § 1915(g),

15  when the opportunity to correct the pleadings has been afforded and there has been no

16  modification within a reasonable time."  *Knapp v. Hogan*, 738 F.3d 1106, 1108-09 (9th Cir.

17  2013).  If he chooses to file a first amended complaint, Plaintiff should endeavor to make it as

18  concise as possible.  He should merely state which of his constitutional rights he feels were

19  violated by each named defendant and its factual basis.  Plaintiff need not and should not cite

20  legal authority for his claims in a first amended complaint.  His factual allegations are accepted as

21  true and need not be bolstered by legal authority at the pleading stage.  If Plaintiff files a first

22  amended complaint, his factual allegations will be screened under the legal standards and

23  authorities stated in this order.

24          B.      **Linkage and Causation**

25          Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or

26  other federal rights by persons acting under color of state law.  *Nurre v. Whitehead*, 580 F.3d

27  1087, 1092 (9th Cir 2009); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006);

28  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  "Section 1983 is not itself a source of

1  substantive rights, but merely provides a method for vindicating federal rights elsewhere

2  conferred." *Crowley v. Nevada ex rel. Nevada Sec'y of State*, 678 F.3d 730, 734 (9th Cir. 2012)

3  (citing *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S.Ct. 1865 (1989)) (internal quotation

4  marks omitted).  To state a claim, Plaintiff must allege facts demonstrating the existence of a link,

5  or causal connection, between each defendant's actions or omissions and a violation of his federal

6  rights.  *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013);

7  *Starr v. Baca*, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

8        Plaintiff's allegations must demonstrate that each defendant personally participated in the

9  deprivation of his rights.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  This requires the

10 presentation of factual allegations sufficient to state a plausible claim for relief and to put each

11 defendant on notice of their allegedly offending acts.  *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S.*

12 *Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short

13 of meeting this plausibility standard.  *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

14 **III.**    **Discussion**

15     **A.**    **Plaintiff's Allegations**

16       Plaintiff alleges that he is civilly detained at Coalinga State Hospital ("CSH") pursuant to

17 California's Sexually Violent Predator Act contained within Welfare & Institution Code sections

18 6600 et seq. ("SVPA").  One so detained is a Sexually Violent Predator ("SVP") which is

19 statutorily defined as an individual with "a diagnosed mental disorder that makes the person a

20 danger to the health and safety of others in that it is likely that he or she will engage in sexually

21 violent criminal behavior."  Welf. & Inst. Code § 6600(a).[1]  The SVPA authorizes the involuntary

22 civil commitment of a person who has completed a prison term, but has been given a "full

23 evaluation" and found to be a sexually violent predator.  *Reilly v. Superior Court*, 57 Cal.4th 641,

24 646 (2013); *People v. McKee*, 47 Cal.4th 1172, 1185 (2010).

25       Plaintiff complains that the circumstances under which he is detained at CSH are causing

26 _____

27 [1] California voter-approved Proposition 83 extended the term of commitment under the SVPA to an indeterminate period, ensuring the SVP remains in custody until successfully proving he or she is "no longer an SVP or the Department of Mental Health determines he [or she] no longer meets the definition of an SVP."  *Bourquez v.*

28 *Superior Court*, 156 Cal.App.4th 1275, 1287 (2007); Welf. & Inst. Code §§ 6605, 6608(i).

1   him to have anxiety attacks, for which he seeks injunctive and declaratory relief as well as

2   monetary damages.  Specifically, Plaintiff alleges that he suffers from Post-Traumatic Stress

3   Disorder that was brought on when he was sexually abused by cellmates in 1993, 1994, and 2010

4   - before he arrived at CSH in May of 2016.  (Doc. 1, p. 7.)  As a result of his PTSD, Plaintiff

5   cannot be celled with other males, or supervised while he sleeps by male staff.  When he is

6   subjected to these conditions, he experiences anxiety attacks and requires a private room with

7   observation only by female staff.  While in a dorm room with three other patients, one of them

8   alleged that he was sexually assaulted and Plaintiff was present during conversations that patient

9   had with staff which triggered him to have emotional stress and flash backs of his own sexual

10  abuse when in double housing.  (*Id.*, p. 8.)  Plaintiff produced documents to CSH staff under

11  which he received single-cell status before his transfer to CSH but was ridiculed when he

12  requested it and that he not be supervised by male staff.  (*Id.*, p. 10.)  Despite the fact that he

13  could have been placed in a single room, Plaintiff's treatment team initially "placed 1:1 males on

14  him which triggered his PTSD and causing [sic] chest pain, anxiety attacks and mental and

15  emotional trauma, when plaintiff complained, staff retaliated by falsifying disciplinary reports."

16  (*Id.*)  When he asked not to be supervised by males, he was ridiculed, and when he was

17  supervised by females he was falsely accused of "masturbating under the covers."  (*Id.*, pp. 10-

18  11.)

19          Plaintiff alleges that "nurse John Doe African American," who is openly homosexual,

20  subjected him to excessive force by responding with "So what?" when Plaintiff expressed his

21  fears of being raped in his sleep if in 1:1 male housing.  (*Id.*, p. 12.)  When Plaintiff further

22  complained to this nurse, the nurse "reached out and did a sharp finger thrust poke in vital chest

23  area causing pain and kept making threats."  (*Id.*)  Plaintiff called 911 and filed a complaint.  (*Id.*)

24          Plaintiff filed a lawsuit (1:16-cv-1114) in which he filed a request for injunctive relief.  As

25  a result, staff agreed to place Plaintiff in a single room and set up a treatment plan for him to stay

26  in unit 5 and to receive treatment of his PTSD from the sexual abuses he was subjected to while

27  in prison.  (*Id.*, p. 13.)  Plaintiff withdrew that lawsuit as part of the treatment plan, but once he

28  did so, Defendants Weshler, Jones, and Mwangi "have retaliated and refuse to switch teams"

1   which causes Plaintiff to suffer further mental injury and to have anxiety attack which "could kill

2   plaintiff or cause high blood pressure and stroke, etc." (*Id.*)

3        Subsequently, Plaintiff was placed in a single room -- where he apparently continues to

4   reside. (*Id.*, p. 13.)  However, he complains that his room does not have TV or radio reception (as

5   is available in other single rooms).  (*Id.*, pp. 13-14.)  Further, his room is by the "mop room"

6   where other patients hang and loudly horse-around, which prevents him from being able "to get

7   some rest and clear his head, is causing anxiety to raise mental trauma." (*Id.*, p. 14.)  Plaintiff

8   alleges that the patients in the mop room area engage in "horse play" and "sex play" which causes

9   him to have flash backs.  (*Id.*, p. 15.)  Plaintiff alleges that, because of this, he is forced to stay out

10  of his room and go to the day room, but that other patients also engage in "horse play" and "sex

11  play" in the dayroom.  (*Id.*)

12       Plaintiff alleges that his unit supervisor found another room for Plaintiff to move to that

13  had reception, and that Defendant Faina had no objection to Plaintiff moving, but that Defendants

14  Weshler, Jones, and his treatment team have refused to move him despite knowing the anxiety

15  and mental/emotional trauma that Plaintiff is experiencing that causes him to have ongoing chest

16  pain that could cost him his life.  (*Id.*, p. 14.)  Plaintiff alleges that Defendants Santiego, Weshler,

17  Mwungi, and Jones have told him that nothing he complains about matters and that nothing will

18  change without a court order -- which has caused him mental trauma and chest pains.  (*Id.*)

19       Plaintiff alleges that everything would be fine if staff would place him in a room has TV

20  and radio reception, away from mop room, so that he might listen to the radio or watch TV for

21  "therapy." (*Id.*, p. 15.)  Plaintiff alleges that he has "documents to support single room placement

22  until he can receive treatment [for his PTSD from being sexually assaulted while in prison] prior

23  to dorm/double cell placement." (*Id.*, p. 13.)

24       Without minimizing the distress to Plaintiff claims, for the reasons discussed below, his

25  allegations do not state a cognizable claim.

26  **B.    Legal Standards**

27       To determine whether conditions of confinement of civilly committed individuals have

28  been violated, courts look to the substantive due process clause of the Fourteenth Amendment.

6

1  *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982); *Jones v. Blanas*, 393 F.3d 918, 931-32 (9th

2  Cir. 2004).  States are thus required "to provide civilly-committed persons with access to mental

3  health treatment that gives them a realistic opportunity to be cured and released," *Sharp v.*

4  *Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (citing *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th

5  Cir. 1980)), via "'more considerate treatment and conditions of confinement than criminals whose

6  conditions of confinement are designed to punish.'"  *Id.* (quoting *Youngberg v. Romeo*, 457 U.S.

7  307, 322 (1982)).

8          Although civilly detained persons must be afforded more considerate treatment and

9  conditions of confinement than criminals, where specific standards are lacking, courts may look

10  to decisions defining the constitutional rights of prisoners, to establish a floor for the

11  constitutional rights of persons detained under a civil commitment scheme.  *Padilla v. Yoo*, 678

12  F.3d 748, 759 (9th Cir. 2012) (citing *Hydrick v. Hunter*, 500 F.3d 978, 989 (9th Cir. 2007),

13  *vacated and remanded on other grounds by* 556 U.S. 1256 (2009)).  Eighth Amendment

14  standards may be borrowed to establish the constitutional floor.  *Frost v. Agnos*, 152 F.3d 1124,

15  1128 (9th Cir. 1998); *Redman v. County of San Diego*, 942 F.2d 1435, 1441 (9th Cir. 1991),

16  *abrogated on other grounds by* 511 U.S. 825 (1994).

17                    **1.      Substantive Due Process**

18          "To establish a violation of substantive due process . . . , a plaintiff is ordinarily required

19  to prove that a challenged government action was clearly arbitrary and unreasonable, having no

20  substantial relation to the public health, safety, morals, or general welfare.  Where a particular

21  amendment provides an explicit textual source of constitutional protection against a particular

22  sort of government behavior, that Amendment, not the more generalized notion of substantive due

23  process, must be the guide for analyzing a plaintiff's claims." *Patel v. Penman*, 103 F.3d 868, 874

24  (9th Cir. 1996) (citations, internal quotations, and brackets omitted), *cert. denied*, 520 U.S. 1240

25  (1997); *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).  However, "[t]he substantive

26  rights of civilly committed persons derive from the Due Process Clause of the Fourteenth

27  Amendment and not the Cruel and Unusual Punishment Clause of the Eighth Amendment."

28  *Endsley v. Luna*, No. CV 06-06961-DSF (SS), 2009 WL 789902, at *4 (C.D.Cal. Mar.23, 2009),

1   (citing *Youngberg v. Romeo*, 457 U.S. 307, 321-22, 102 S.Ct. 2452 (1982)); *Bell v. Wolfish*, 441

2   U.S. 520, 535 n. 16 (1979); *see also Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S.Ct. 1780 (1992)

3   (person not criminally convicted may be detained if mentally ill and dangerous but may not be

4   "punished").

5          The substantive component of the Due Process Clause protects civil detainees from

6   unconstitutional conditions of confinement and ensures a plaintiff's right to personal safety while

7   in a state detention facility. *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982). The Supreme Court

8   has noted that the right to personal security constitutes a "historic liberty interest" protected

9   substantively by the Due Process Clause. *Id.*, (quoting *Ingraham v. Wright*, 430 U.S. 651, 673,

10  (1977)). And that right is not extinguished by lawful confinement, even for penal purposes. *See*

11  *Hutto v. Finney*, 437 U.S. 678 (1978). "[T]he due process rights of a pretrial detainee are 'at least

12  as great as the Eighth Amendment protections available to a convicted prisoner.'" *Castro v.*

13  *County of Los Angeles,* --- F.3d ---, 2016 WL 4268955, *3 (9th Cir. Aug. 15, 2016) (quoting *City*

14  *of Revere v. Mass. Gen. Hosp*., 463 U.S. 239, 244 (1983)).

###                    2.        Excessive Force

16         Plaintiff alleges that he was subjected to excessive force when nurse John Doe "reached

17  out and did a sharp finger thrust poke in vital chest area causing pain and kept making threats."

18  (Doc. 1, pp 11-12.)

19         A detainee need only show that the force a prison official deliberately used against him

20  was objectively unreasonable. *Kingsley v. Hendrickson*, --- U.S. ---, 135 S.Ct. 2466, 2472-73

21  (2015). "[I]t does not matter whether the defendant understood that the force used was excessive,

22  or intended it to be excessive, because the standard is purely objective." *Castro*, at *5. However,

23  the defendant's act must have been purposefully and knowingly performed as "liability for

24  *negligently* inflicted harm is categorically beneath the threshold of constitutional due process."

25  *Kingsley*, 135 S. Ct. at 2472 (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 849, 118

26  S.Ct. 1708 (1998) (emphasis added in *Kingsley*)). Some factors that may bear on the

27  reasonableness or unreasonableness of the force used include: the relationship between the need

28  for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort

1  made by the officer to temper or to limit the amount of force; the severity of the security problem

2  at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively

3  resisting. *Kinglsey*, 135 S.Ct. at 2473 (citing *e.g., Graham v. Connor*, 490 U.S. 386, 396, 109

4  S.Ct. 1865 (1989)). "[A] pretrial detainee can prevail by providing only objective evidence that

5  the challenged governmental action is not rationally related to a legitimate governmental

6  objective or that it is excessive in relation to that purpose." *Id.* at 2473-74.

7        Here, the only force Plaintiff alleges was used against him was a poke to his chest.

8  Though, albeit allegedly sharp and thrusting enough to cause Plaintiff pain, being poked in the

9  chest by another person's finger equates to nothing more than a *di minimus* use of force, which is

10  not actionable. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("The Eighth Amendment's

11  prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition

12  *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the

13  conscience of mankind.'" (quotations and citations omitted)).  Thus, Plaintiff fails to state a

14  cognizable excessive force claim.

15              **3.      Retaliation**

16        Plaintiff variously alleges that he was subjected to unconstitutional retaliation.  (*See* Doc.

17  1, pp. 8, 12, 13.)  The First Amendment prohibits retaliation for engaging in protected conduct.

18  *Waitson v. Carter*, 668 F.3d 1108, 1114-1115 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262,

19  1269 (9th Cir.2009).  A retaliation claim has five elements.  *Id.* at 1114.

20        First, the plaintiff must allege that the retaliated-against conduct is protected.  *Id.*  The

21  filing of an inmate grievance is protected conduct, *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th

22  Cir. 2005), as are the rights to speech or to petition the government, *Rizzo v. Dawson*, 778 F.2d

23  527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989);

24  *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  Second, the plaintiff must show the

25  defendant took adverse action against the plaintiff.  *Rhodes*, at 567.  Third, the plaintiff must

26  allege a causal connection between the adverse action and the protected conduct.  *Waitson*, 668

27  F.3d at 1114. Fourth, the plaintiff must allege that the "official's acts would chill or silence a

28  person of ordinary firmness from future First Amendment activities."  *Rhodes,* 408 F.3d at 568

9

1   (internal quotation marks and emphasis omitted).  Fifth, the plaintiff must allege "that the prison

2   authorities' retaliatory action did not advance legitimate goals of the correctional institution. . . ."

3   *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985).  Thus, mere allegations that Plaintiff engaged

4   in protected activity, without knowledge resulting in animus by a Defendant, is insufficient to

5   show that Plaintiff's protected activity was the motivating factor behind a Defendant's actions.

6          Here, though Plaintiff alleges that he has previously filed lawsuits, they were against state

7   actors on actions during his incarceration, before he arrived at CSH.  His allegations fail to show

8   that any of the named Defendants were aware of those lawsuits as an impetus for the actions he

9   complains of.  Further, Plaintiff alleges that he was retaliated against because of the facts

10  involved in his underlying criminal conviction -- which does not equate to protected conduct for a

11  retaliation claim.  Thus, Plaintiff fails to state a cognizable retaliation claim.

12              **4.      Supervisorial Defendants**

13         It appears that Plaintiff may have named a number of the defendants in this action merely

14  because they hold supervisorial positions.  When a named defendant holds a supervisory position,

15  the causal link between him and the claimed constitutional violation must be specifically alleged.

16  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441

17  (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To state a claim for relief under section 1983

18  based on a theory of supervisory liability, Plaintiff must allege some facts that would support a

19  claim that supervisory defendants either: personally participated in the alleged deprivation of

20  constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or

21  "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights'

22  and is 'the moving force of the constitutional violation.'"  *Hansen v. Black*, 885 F.2d 642, 646 (9th

23  Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Under

24  section 1983, liability may not be imposed on supervisory personnel for the actions of their

25  employees under a theory of *respondeat superior*.  *Iqbal*, 556 U.S. at 677.

26         However, "a plaintiff may state a claim against a supervisor for deliberate indifference

27  based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or

28  her subordinates."  *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011).  A showing that a supervisor

1    acted, or failed to act, in a manner that was deliberately indifferent to a plaintiff's rights is

2    sufficient to demonstrate the involvement and the liability of that supervisor; thus, when a

3    supervisor is found liable based on deliberate indifference, the supervisor is being held liable for

4    his or her own culpable action or inaction, not held vicariously liable for the culpable action or

5    inaction of his or her subordinates.  *Id.*

6          As stated above, Plaintiff fails to state a cognizable claim against any of the named

7    defendants for any of their supervisors to have had knowledge of and acquiesced in their

8    unconstitutional conduct.

9                    **5.      Claims Under California Law**

10                   **a.      California Tort Claims Act**

11         Under the California Tort Claims Act ("CTCA"), set forth in California Government Code

12   sections 810 et seq., a plaintiff may not bring a suit for monetary damages against a public

13   employee or entity unless the plaintiff first presented the claim to the California Victim

14   Compensation and Government Claims Board ("VCGCB" or "Board"), and the Board acted on

15   the claim, or the time for doing so expired.  "The Tort Claims Act requires that any civil

16   complaint for money or damages first be presented to and rejected by the pertinent public entity."

17   *Munoz v. California*, 33 Cal.App.4th 1767, 1776, 39 Cal.Rptr.2d 860 (1995).  The purpose of this

18   requirement is "to provide the public entity sufficient information to enable it to adequately

19   investigate claims and to settle them, if appropriate, without the expense of litigation."  *City of*

20   *San Jose v. Superior Court*, 12 Cal.3d 447, 455, 115 Cal.Rptr. 797, 525 P.2d 701 (1974)

21   (citations omitted).  Compliance with this "claim presentation requirement" constitutes an

22   element of a cause of action for damages against a public entity or official.  *State v. Superior*

23   *Court (Bodde)*, 32 Cal.4th 1234, 1244, 13 Cal.Rptr.3d 534, 90 P.3d 116 (2004).  Thus, in the state

24   courts, "failure to allege facts demonstrating or excusing compliance with the claim presentation

25   requirement subjects a claim against a public entity to a demurrer for failure to state a cause of

26   action."  *Id*. at 1239, 13 Cal.Rptr.3d 534, 90 P.3d 116 (fn.omitted).

27         Federal courts likewise must require compliance with the CTCA for pendant state law

28   claims that seek damages against state public employees or entities.  *Willis v. Reddin*, 418 F.2d

11

1    702, 704 (9th Cir.1969); *Mangold v. California Public Utilities Commission*, 67 F.3d 1470, 1477

2    (9th Cir.1995).  State tort claims included in a federal action, filed pursuant to 42 U.S.C. § 1983,

3    may proceed only if the claims were first presented to the state in compliance with the claim

4    presentation requirement.  *Karim–Panahi v. Los Angeles Police Department*, 839 F.2d 621, 627

5    (9th Cir.1988); *Butler v. Los Angeles County*, 617 F.Supp.2d 994, 1001 (C.D.Cal.2008).

6        Plaintiff fails to state any allegations which show he complied with the CTCA upon which

7    to be allowed to pursue his defamation claim under California law in this action.

8            **b.**      **Defamation of Character**

9        Plaintiff alleges that he has been subjected to defamation of character by Defendant

10   Weshler when she placed a diagnosis of pedophilia in his mental health records and failed to

11   correct it despite having read that his case was for rape by force of a white, 21-year-old woman.

12   (Doc. 1, p. 8.)

13       "Defamation is an invasion of the interest in reputation."  *Gilbert v. Sykes*, 147

14   Cal.App.4th 13, 27, 53 Cal.Rptr.3d 752, 764 (2007) (internal quotations and citation omitted).

15   Under California law, "[t]he tort of defamation in involves (a) a publication that is (b) false, (c)

16   defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or causes special

17   damages."  *Taus v. Loftus*, 40 Cal.4th 683, 720, 151 P.3d 1185, 1209 (2007) (internal quotations

18   and citation omitted).  Plaintiff fails to state any allegations to show that Defendant Weshler's

19   diagnosis was false, or that she publicized it beyond his treatment team.

20           **6.**      **Injunctive and Declaratory Relief**

21       Plaintiff requests injunctive and declaratory relief.  As an initial matter, Plaintiff has not

22   stated a cognizable claim upon which relief may be granted.  Thus, there is no actual case or

23   controversy before the Court at this time and Court lacks the jurisdiction to issue the orders

24   sought by Plaintiff.  *Summers v. Earth Island Institute*, 129 S.Ct. 1142, 1149 (2009); *Stormans,*

25   *Inc. v. Selecky,* 586 F.3d 1109, 1119 (9th Cir. 2009); 18 U.S.C. § 3626(a)(1)(A).  Further,

26   Plaintiff's claim for damages will necessarily entail a determination whether his rights were

27   violated and his request for declaratory relief is dismissed since subsumed by those claims.

28   *Rhodes v. Robinson,* 408 F.3d 559, 565-66 n.8 (9th Cir. 2004).

1

**ORDER**

2          For the reasons set forth above, Plaintiff's Complaint is dismissed with leave to file a first

3    amended complaint **within 30 days**.  Any such first amended complaint shall not exceed **twenty-**

4    **five (25) pages** in length.

5          Plaintiff must demonstrate in any first amended complaint how the conditions complained

6    of have resulted in a deprivation of Plaintiff's constitutional rights.  *See Ellis v. Cassidy*, 625 F.2d

7    227 (9th Cir. 1980).  The first amended complaint must allege in specific terms how each named

8    defendant is involved.  There can be no liability under section 1983 unless there is some

9    affirmative link or connection between a defendant's actions and the claimed deprivation.  *Rizzo*

10   *v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v.*

11   *Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

12         Plaintiff's first amended complaint should be brief.  Fed. R. Civ. P. 8(a).  Such a short and

13   plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon

14   which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v.*

15   *Gibson*, 355 U.S. 41, 47 (1957)).  Although accepted as true, the "[f]actual allegations must be

16   [sufficient] to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. 127, 555

17   (2007) (citations omitted).  Plaintiff is further reminded that an amended complaint supercedes

18   the original, *Lacey v. Maricopa County*, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n.1

19   (9th Cir. Aug. 29, 2012) (en banc), and must be "complete in itself without reference to the prior

20   or superceded pleading,"  Local Rule 220.

21         The Court provides Plaintiff with opportunity to amend to cure the deficiencies identified

22   by the Court in this order.  *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff

23   may not change the nature of this suit by adding new, unrelated claims in his first amended

24   complaint.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

25         Based on the foregoing, the Court **ORDERS**:

26              1.    Plaintiff's Complaint is dismissed, with leave to amend;

27              2.    The Clerk's Office shall send Plaintiff a civil rights complaint form;

28              3.    **Within 30 days** from the date of service of this order, Plaintiff must file either a

13

1    first amended complaint curing the deficiencies identified by the Court in this

2    order or a notice of voluntary dismissal; and

3    4.    **If Plaintiff fails to comply with this order, this action will be dismissed for**

4    **failure to obey a court order and for failure to state a claim.**

5

6    IT IS SO ORDERED.

7    Dated:   **October 11, 2016**                        **/s/ Jennifer L. Thurston**
                                              UNITED STATES MAGISTRATE JUDGE